IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID HERNANDEZ,

    Petitioner,                              No. CIV S-04-0280 GEB GGH P

    vs.

JOSEPH McGRATH,

    Respondent.                         ORDER

_____/

*Introduction and Summary*

        This case involves the all too familiar gang ambush shootings allegedly undertaken in a never ending cycle of act and retribution. The case also involves the perverse code of gang ethics where shooting someone is OK (nevertheless subjecting the shooter to possible retribution), but the unpardonable sin is to be seen as a snitch, even when cooperating with a law enforcement investigation attempting to bring to justice the rival gang aggressor who killed or attempted to kill the victim gang member or associates.

        Petitioner requests an evidentiary issue on the specific issue of ineffective assistance of counsel. Defense trial counsel altered a statement of one of the witnesses before he turned it over to the prosecution because he thought the redacted portion to be inculpatory. This fact came out at trial as a result of the prosecution cross-examination, and the trial court issued a

1

severe evidentiary sanction, including the instruction to the jury to accept a fact known to be untrue. Petitioner desires to posit by means of trial counsel's testimony at evidentiary hearing what trial counsel might have done in terms of changed tactics, if he had not committed the discovery violation.

For the reasons set forth below, the motion for evidentiary hearing is denied.

*Facts*

The full details of the case need not be set forth herein. Petitioner was convicted of participating in two gang-related shootings involving five victims. The trial court sentenced petitioner to life in prison for the attempted premeditated murder of a wounded victim, Samuel Vasquez, and imposed a consecutive term of 25 years to life for a firearm enhancement as well as some other concurrent sentences. With respect to the Vasquez charge, petitioner posited a defense that he was at a birthday party at his girlfriends's house (Claudia Manriquez) at the time of the shooting. Manriquez also testified that at one time pertinent to the chronology of one of the shootings, petitioner and she had traveled to a store to pick up the birthday cake. Manriquez did not relate on direct that petitioner, when at the shopping center, had walked over and talked to Ramiro Montanez, who was then driving a stolen pick-up which was involved in the later Vasquez shooting. Petitioner's palm and thumb print and other prints (as the undersigned understands) were found on the pick-up. While this alleged meeting of petitioner and Montanez could have been confirmatory of petitioner's whereabouts at a particular time, and the meeting could have negated the impact of the print evidence, it was also problematic to the defense in that the meeting could have been seen as preparatory to the later shooting, and the prosecutor could and did argue that the placement of the prints was consistent with petitioner having driven the stolen pick-up involved in the attempted murder. On direct, defense counsel did not ask Claudia Manriquez any questions about petitioner's purported encounter with Montanez. According to the California Court of Appeal:

\\\\\

On cross-examination, the prosecutor asked Claudia a series of questions about defendant's whereabouts during the trip. Claudia revealed that, when they arrived at the store, defendant stopped to talk to Montanez, who was sitting in the driver's seat of a large pickup truck in the store's parking lot. She indicated she and Galaviz entered the store while defendant remained in the parking lot talking to Montanez. When the prosecutor asked her if she saw defendant touch the driver's mirror on the truck, she replied: "He probably could have leaned on it...he probably could have touched it." Claudia asserted she told Stewart, defendant's investigator, about defendant having seen Montanez, but conceded that she did not tell him that defendant went over to the truck.

Later in the proceedings, the prosecutor told the court that he wished to call investigator Stewart as a rebuttal witness to ask whether Claudia had told him previously about seeing defendant with Montanez. According to the prosecutor, there was no reference to Montanez or the pickup truck in the discovery materials he received regarding Stewart's interview with Claudia on December 13, 1999.

At this point, defense counsel revealed that, during her interview by Stewart on December 22, 1999, Claudia had mentioned defendant's encounter with Montanez.

Calling the omission a "huge problem," the court stated it intended to sanction the discovery violation by preventing Stewart from testifying that Claudia had told him of the encounter.

At the request of defense counsel, the court held an in camera hearing to learn of counsel's reasons for not turning over Stewart's [complete] report to the prosecution. At the hearing, counsel explained that he did not think he had to disclose to the prosecutor this portion of her statement to Stewart because he never intended to have Claudia testify about her observations of Montanez in the truck. He redacted this information from Stewart's report before giving it to the prosecutor because he believed the evidence was inculpatory in that it showed defendant had a relationship with Montanez.

Following the hearing, the court stated that defense counsel had explained his tactics, and that his decision not to disclose Claudia's statement to Stewart about defendant speaking with Montanez at the grocery store was made in good faith. Nonetheless, the court concluded counsel had violated the reciprocal discovery provisions...by not disclosing the entirety of the statement made by a witness counsel intended to call at trial. In effect, counsel had "sandbagged" the prosecution, which warranted the sanction of precluding Stewart from testifying that Claudia had timely revealed the information about Montanez to him. In addition, the court stated that it would advise the jurors that Claudia did *not* mention

3

>Montanez and the pickup truck when Stewart interviewed her. The court reasoned that the sanction in effect allowed the prosecutor to impeach Claudia with a prior inconsistent statement, while not forcing counsel to reveal his theory of the case by disclosing the unredacted contents of Stewart's report.
>
>In accordance with its ruling, the court advised the jurors that they were to consider as conclusively proved the following: "On December 22, 1999, Wilson Stewart interviewed Claudia Manriquez regarding the birthday party and the trip to the store to pick up the cake. She did not tell him of the pickup truck in the parking lot, nor of defendant discussing – talking to the man in the pickup truck."

Court of Appeal Opinion at 25-27.

On direct appeal, petitioner raised the issues that the trial court had erred in finding a violation of discovery obligations, the trial court erred by excluding evidence as a sanction, that the sanction was overly severe in any event, and that alternatively, defense counsel was ineffective when he violated the discovery rules. The latter claim was very short, and based solely on the record. Petitioner argued that counsel's actions were prejudicial in that the discovery sanction was so severe.

The appellate court found that the entire report should have been disclosed, and that trial counsel had violated his discovery obligations, but that the sanction given was unwarranted. The jury was instructed as to a matter that was untrue – Claudia had in fact mentioned some of the meeting to Stewart – but the jury was not informed about this. The jury was left to believe, by virtue of the court's instruction, that Claudia had lied about the meeting. Nevertheless, because Claudia had been impeached in significant other particulars as to the supposed birthday party, petitioner being at her home at all pertinent times, and with respect to the trip to the store happening at all, the appellate court found that the sanction, which clearly would have impeached Claudia further, was harmless.

*Petitioner Is Procedurally Precluded From Obtaining an Evidentiary Hearing*

Petitioner argues here that he needs defense counsel to testify as to what counsel might have done if he had not violated the discovery rules. Specifically, petitioner now

represents that counsel would have disclosed the entire report and would testify that he would have questioned Manriquez about the meeting in order to negate the print evidence, i.e., perhaps petitioner touched the mirror and door during this meeting. The downside that the meeting may have looked like a planning meeting would just have to be endured.

Although the issue of trial counsel's discovery violation was highlighted on direct appeal, petitioner did not file a habeas action in which he proffered the outside-the-record-facts of what tactics his counsel might have used if counsel had not decided to alter the evidence. Respondent claims that because petitioner did not even attempt to obtain an evidentiary hearing for this information via a state habeas, petitioner has not acted diligently under federal AEDPA law. Petitioner believes that the matter was at issue on direct appeal sufficiently that no request for an evidentiary hearing need have been made. In addition, petitioner somewhat lamely argues that if he had filed a state habeas corpus action, it might have been dismissed for being untimely (as if that were an excuse for failing to ask for an evidentiary hearing).

Generally:

> To obtain an evidentiary hearing on an ineffective assistance of counsel claim, a habeas petitioner must establish that (1) his allegations, if proven, would constitute a colorable claim, thereby entitling him to relief and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts.

Correll v Stewart, 137 F.3d 1404, 1413 (9th Cir. 1998). If, of course, petitioner's facts cannot stand as the basis for a federal claim, e.g., the alleged error is not prejudicial as a matter of law, no evidentiary hearing is required.

Since the passage of AEDPA, a petitioner who has "failed to develop" a claim, i.e., had an opportunity to develop a claim, but did not do so, is not entitled to an evidentiary hearing unless that petitioner demonstrates diligence to discover the factual predicate for his claim despite his "failure," and that he is actually innocent of the crime for which he was convicted. 28 U.S.C. § 2254(e)(2); Williams (Michael) v. Taylor, 529 U.S. 420, 120 S. Ct. 1479 (2000). A petitioner has not neglected his or her rights in state court if diligent in efforts to

5

1  search for evidence. Williams, 529 U.S. at 435-436, 120 S. Ct. at 1490. "Diligence ... depends
2  upon whether the prisoner made a reasonable attempt, in light of the information available at the
3  time, to investigate and pursue claims in state court." Id. "Diligence require[s] in the usual case
4  that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner
5  prescribed by state law." Id.; Bragg v. Galaza, 242 F.3d 1082, 1090 (9th Cir. 2001), as amended
6  252 F.3d 1150 (9th Cir. 2001). It may be that petitioner's rendition of facts in the petition,
7  explicitly or implicitly, calls for an evidentiary hearing, see Horton v. Mayle, 408 F.3d 570, 582
8  (n.6), but even under that case, one must present something to the state courts in the manner of a
9  proffer of the outside-the-record facts. A petitioner is not excused from presenting outside-the-
10 record facts which petitioner believes dispositive, or very important, simply because the same
11 issue was discussed from an on-the-record standpoint on direct review. See also Aiken v.
12 Spalding, 841 F.2d 881, 883 (9th Cir. 1988); *compare* Earp v. Ornoski, 431 F.3d 1158, 1169 (9th
13 Cir.2005) ("Because the factual basis for Earp's claim was adequately proffered to the state
14 court, he is entitled to an evidentiary hearing...").

15       Having failed to ever proffer to the state courts the testimony petitioner now seeks
16 to have delivered here, or even to file a habeas corpus action, he is at fault for not having given
17 the state courts the opportunity to review the ineffective assistance claim with the facts now
18 proffered. Petitioner does not allege that any of the exceptions to the default are applicable, and
19 therefore, he is precluded from an evidentiary hearing. 28 U.S.C. § 2254 (e)(2).

20       However, the lack of an evidentiary hearing is not fatal to the claim. In this
21 situation, as petitioner argues, the options which would have been open to trial counsel were very
22 limited. It is a tautology to assert that if counsel had not violated the discovery rules, he would
23 have turned over the entire report – the essence of the violation was that not all information had
24 been disclosed.[1] Moreover, having turned over the evidence, counsel would necessarily have

---

[1] The undersigned would not hesitate to add that trial counsel's deficiencies involved more than a simple discovery violation. It involved the alteration of evidence with a submission

1  utilized it as best he could.  Once the meeting had been disclosed, it would be irrational to
2  assume counsel would not have highlighted the potentially favorable print evidence by asking
3  Manriquez about the meeting of petitioner and Montanez.
4          The court will ultimately review the claim with this scenario in mind – the merits
5  of which are not addressed here.  Not only is an evidentiary hearing precluded, it is not necessary.
6  *Conclusion*
7          Petitioner's May 24, 2006, motion for an evidentiary hearing is denied.
8  DATED: 8/30/06

                                                  /s/ Gregory G. Hollows

                                                  UNITED STATES MAGISTRATE JUDGE

10  GGH:gh:035
    hern0280.ord

---

25  of the altered evidence to one's adversary.  Counsel had an ethics problem as well as a discovery
    problem.  Representing one's client, even in a criminal context, does not entitle one to alter
26  documents to be disclosed in discovery.